# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| RAMOT AT TEL AVIV UNIVERSITY LTD., | No. 2:19-cv-225-JRG |
| *Plaintiff,* | |
| vs. | **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC., | |
| *Defendant.* | |

## JOINT PROPOSED FINAL JURY INSTRUCTIONS

[Note to the Court: Where the parties do not agree on proposed instructions, Plaintiff's proposed language is in <mark>yellow</mark> and Defendants' proposed language is in <mark>blue</mark>.]

## FINAL JURY INSTRUCTIONS

**I.      Introductory Instructions[1]**

Ladies and Gentlemen of the Jury: You have now heard the evidence in this case.  I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions for your review when you retire to deliberate in a few minutes.  Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It is your duty to follow the law as I give it to you.  On the other hand, as I have said previously, you, the jury, are the sole judges of the facts in this case.

Do not consider any statement that I have made in the course of the trial or may make in these instructions as an indication that I have any opinion about the facts of the case.

You just heard closing arguments from the attorneys.  Statements and arguments of the attorneys are not evidence, and they are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it and sign it.

Answer the questions in the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions to reach that result.  Again, your answers and your verdict must be unanimous.

---

[1]   *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.); *Rembrandt Wireless Techs., LP v. Cisco Elecs. Co. Ltd.*, Case No. 2:13-cv-213-JRG, Jury Instructions Dkt. 300 (E.D. Tex. Feb. 9, 2015); Fifth Circuit Pattern Jury Instructions – Civil, § 1.1 Preliminary Instructions (2014, rev. Oct. 2016).

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received and admitted into in evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.   By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

As I have told you previously, the attorneys in this case are advocates for their competing clients and have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court.  When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.  If the objection was overruled, then you may treat the question and the answer to that question just as you would treat the answer to any other question.

Now, at times during the trial it was necessary for the Court to talk with the lawyers here at the bench outside of your hearing, or by calling a recess and talking to them while you were out of the courtroom.  This happened because often during a trial, something comes up that does not involve the jury.  You should not speculate about what was said during such discussions that took place outside of your presence.

Generally speaking, there are two types of evidence that you may consider in properly finding the truth as to the facts of this case.  One is direct evidence, such as testimony of a witness. The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.   As a general rule, the law makes

no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.[2]  When there is no dispute about certain facts, the attorneys on both sides may agree or "stipulate" to those facts.  When such an agreement is reached, you must, unless otherwise instructed, accept the stipulation as evidence and treat those facts as proven.  During the course of the trial, you were read certain stipulated evidence that you should also treat as proven.

Certain testimony in this case has been presented to you through depositions.  A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.  If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.  As I told you earlier, before the trial, the attorneys representing the parties in this case asked questions of these deposition witnesses, who were under oath.  At that time, a court reporter participated in the video deposition and recorded their sworn testimony.  You should give the same consideration to and determine the credibility and importance of deposition testimony just as if the witness had been present and testified from the witness stand in the courtroom.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.  However, you should not base your decision on any evidence not presented by the parties during this case, including your own personal experiences with any particular companies or products.

---

[2]   Fifth Circuit Pattern Jury Instructions – Civil, § 3.3 Evidence (2014).

When knowledge of technical and financial subject matters may be helpful to the jury, a person who has special training or experience in that technical or financial field—called an "expert witness"—is permitted to state his opinion on those technical or financial matters.  However, you are not required to accept that opinion.  As with any other witness, it is solely up to you to decide whether to rely upon it or not.

Certain exhibits shown to you during the trial were illustrations.  We call these types of exhibits "demonstrative exhibits" or "demonstratives."  Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.  If your recollection of the evidence differs from the demonstratives, you should rely on your recollection.  Demonstrative exhibits are sometimes called "jury aids."  Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence.

## II.    Burden of Proof[3]

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof."  The burden of proof in this case is on Plaintiff for some issues and on Defendant for other issues.

There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

First, a preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Plaintiff, Ramot at Tel Aviv University Ltd., or Ramot, has the burden of proving patent infringement by a preponderance of the evidence.

The Plaintiff, Ramot, also has the burden of proving that Cisco's infringement, if any, is willful by a preponderance of the evidence.

The Plaintiff, Ramot, also has the burden of proving the amount[4] of damages for patent infringement by a preponderance of the evidence.

The Defendant, Cisco Systems Inc., or Cisco, has the burden of proving patent invalidity by clear and convincing evidence.

[**Ramot insert:** Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable.

---

[3]   *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.); *Rembrandt Wireless Techs., LP v. Cisco Elecs. Co. Ltd.*, Case No. 2:13-cv-213-JRG, Jury Instructions Dkt. 300 (E.D. Tex. Feb. 9, 2015).

[4]   *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Jury Instructions Dkt. 166 at 29 (E.D. Tex. March 23, 2017); *Rembrandt Wireless Techs., LP*, 2:13-cv-213-JRG, Jury Instructions Dkt. 300 at 35 (E.D. Tex. Feb. 9, 2015).

Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing standard has been met.][5]

[**Cisco insert**: Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue.  When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence must have persuaded you that the claim or defense is highly probable.  Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If the proof establishes in your mind a firm belief or conviction that something is true, then the standard has been met.[6]]

The "preponderance of the evidence" and "clear and convincing evidence" standards are different from what you may have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

---

[5] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Jury Instructions Dkt. 166 at 10-11 (E.D. Tex. March 23, 2017); *Rembrandt Wireless Techs., LP*, 2:13-cv-213-JRG, Jury Instructions Dkt. 300 at 19 (E.D. Tex. Feb. 9, 2015).

[6] *Packet Intelligence LLC v. Netscout Sys., Inc.*, No. 2:16-cv-230-JRG, Dkt. 252, Oct. 13, 2017 Trial Tr. at 15:20-16:12; *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158-JRG, Dkt. 256 at 3-4 (E.D. Tex. June 18, 2012).

In determining whether any fact has been proven by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

III.    **Summary of Arguments**[7]

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I'll then provide you with detailed instructions on what each side must prove to win on each of its contentions.

[**Ramot insert**:  This case concerns three U.S. patents.  U.S. Patent No. 10,270,535, referred to as the '535 patent, U.S. Patent No. 10,461,866, referred to as the '866 patent, and U.S. Patent NO. 10,033,465, referred to as the '465 Patent.  I will also refer to these patents as the "patents-in-suit" or the "Asserted Patents."] [**Cisco proposal**:  This case concerns three U.S. patents.  U.S. Patent No. 10,033,465, referred to as the '465 patent, U.S. Patent No. 10,270,535, referred to as the '535 patent, and U.S. Patent No. 10,461,866, referred to as the '866 patent.  I will also refer to these patents as the "patents-in-suit" or the "Asserted Patents."]

[**Ramot insert**: Ramot seeks money damages from Cisco for infringing the patents-in-suit via use of its networking equipment with corresponding line cards and optical transceiver modules providing advanced electro-optical modulation techniques.  The accused Cisco products are line cards and modules that include certain of Cisco's various 100G, 200G, and 400G optical modules and associated digital signal processing circuitry and software.] [**Cisco insert**: Ramot contends that Cisco is infringing the patents-in-suit via its use of the accused Cisco products, which are line cards and modules that include certain of Cisco's various 100G, 200G, and 400G optical modules and associated digital signal processing circuitry].  These are collectively called the "accused products." Ramot contends that Cisco's use of the accused products directly infringes claim 1 of the '465 patent, claims 1 and 2 of the '535 patent, and/or claims 7, 8, 10, 11, and 12 of the '866 patent.  These claims are also referred to as the "Asserted Claims."  Ramot also contends that Cisco

---

[7] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.)

is inducing [**Ramot insert: and contributing to infringement**][8] by its customers or others who are using the accused products.  Ramot also alleges that Cisco's infringement is and has been willful. Ramot seeks money damages amounting to a reasonable royalty for Cisco's infringement.

Cisco denies that it directly infringes the Asserted Claims through its use of the accused products.  Cisco also denies that it induces consumers and end users of the accused products to infringe [**Cisco insert if Ramot is permitted to assert contributory infringement:**, and denies that it contributes to such infringement.] Cisco also contends that the Asserted Claims of Ramot's

---

[8] Cisco objects to any instructions regarding contributory infringement.  When asked a direct interrogatory on the issue, Ramot did not provide any facts or evidence regarding such a claim.  *See* Ramot's April 10, 2020 Response to Interrogatory No. 2.  Instead, it incorporated by reference its December 12, 2019 Amended P.R. 3-2 Infringement Contentions and stated that additional information would be provided in a supplemental response and its expert reports.  The Dec. 12, 2019 Infringement Contentions do not make any mention of contributory infringement, and although Ramot did provide a supplemental response to Interrogatory No. 2 on June 18, the supplement related solely to inducement; no allegations, factual or otherwise, were made as to Cisco's allegedly contributory infringement.  Similarly, Dr. Dallesasse's expert report on infringement does not mention contributory infringement and, therefore, he will not be permitted to testify to it at trial.  Accordingly, there is no basis for Ramot to now insist on such instructions.  *See* Fed. R. Civ. P. 37(c).  Given Ramot's failure to disclose during discovery its intention to assert contributory infringement, and the fact that it only raised the issue after the deadline for filing motions *in limine*, Cisco will be seeking leave to file a follow-on Motion *in Limine* on this issue.  To the extent that a Ramot insert includes reference to contributory infringement, Cisco objects to each and every insertion for the reasons stated herein and will not repeat its objections throughout.  Ramot asserts that it provided proper notice of its contributory infringement allegations, which appear, *inter alia*, in its complaints (*see, e.g.*, Dkt. 48 at ¶¶ 2, 43, 56, 69).  Ramot's infringement contentions specifically incorporate the complaints, including "evidence of infringement cited and discussed therein."  Ramot's response to Interrogatory No. 2 specifically asserts infringement under, without limitation, 35 U.S.C. § 271(a), (b), and (c), and also "incorporates by reference its First Amended Complaint (Dkt. 48) and its December 12, 2019 Amended P.R. 3-2 Infringement Contentions."  Ramot's supplemental response to Interrogatory No. 2 specifically addresses elements common to both contributory and induced infringement, including use by another and that "[s]uch use directly infringes each Asserted Claim," as well as Cisco's "specific knowledge that the use by Cisco's customers constitutes infringement."  Dr. Dallesasse's Report also discusses these elements.  Dallesasse Report at ¶¶ 392-393. Cisco mischaracterizes the record and does not have a motion *in limine* directed to contributory infringement.  In any event, contributory can be proven with fact evidence concerning Cisco's knowledge and the nature of the accused products.

patents are invalid.  Cisco further denies Ramot's allegation that any infringement was willful.

Cisco denies that it owes Ramot any damages.

## IV.     Description of Claims & Limitations[9]

Your job is to decide whether an Asserted Claim has been infringed. If you decide an Asserted Claim has been infringed and that such claim is not invalid, then you need to decide whether Cisco's infringement has been willful, and you need to decide the amount of money damages to be awarded to Ramot as compensation for the infringement.

Before you can decide many of the issues in this case, you will need to understand the role of patent claims.  The patent claims are the numbered sentences at the end of the patent.  The claims are important because it is the words of the claims themselves that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention, and provide context for the claims, but it is the claims that define the breadth of the patent's coverage.

[**Ramot insert**: Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers collectively depends on what each of its claims cover].

Claims may describe methods for using a product.  I will call such claims method claims. In this case, Ramot has asserted method claims.

To determine whether Cisco infringes any of the method claims, you need first to understand what each Asserted Claim of the Asserted Patents covers.  The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claim, and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to

---

[9] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Dkt. 166 (E.D. Tex. March 23, 2017); *Rembrandt Wireless Techs., LP v. Cisco Elecs. Co. Ltd.*, Case No. 2:13-cv-213-JRG, Jury Instructions Dkt. 300 (E.D. Tex. Feb. 9, 2015).

you at the start of the case, I have determined the meaning of certain claim terms and I have provided these definitions to you in your juror notebooks.  You must accept my definitions of these words in the Asserted Claims as being correct.

It is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.  You should disregard any evidence presented at trial which contradicts or is inconsistent with the definitions that I have given you.  For claim limitations that I have not construed—that is, interpreted or defined for you—you are to use the plain and ordinary meaning of the terms as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention.[10]

You have been provided with copies of the Asserted Patents, which are inside your juror notebooks, and you may use them in your deliberations.

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  In patent law, the requirements of a claim are often referred to as the "claim elements" or "claim limitations."  Each claim sets forth its elements in a single sentence.  If the use of a product satisfies all of the requirements in that claim sentence, then that use is covered by and infringes the method claim.

For example, a method claim that covers an invention of a process for constructing a table may recite cutting a tabletop, sanding the tabletop, and then gluing four legs to the tabletop, one after another.  In this example, the steps of cutting the tabletop, sanding the tabletop, and then

---

[10] Transcript of Jury Trial, *ContentGuard Holdings, Inc. v. Samsung Elecs. Co. Ltd.*, 2:14-cv-00061 (E.D. Tex. Dec. 4, 2015), Dkt. No. 445.

gluing four legs to the tabletop one after another, are each separate limitations of the claim, and if the process of constructing a table includes each of these elements, it would infringe the claim.

If performance of a process is missing even one limitation or element of a claim, the performance would not infringe that claim.  For example, if a method contains four steps, and someone performs only three of those steps, they do not infringe the claim.[11]

The beginning portion, or preamble, of the Asserted Claims use the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." [**Ramot insert**:  Examples of independent claims here are claims 1 and 2 of the '535 patent, claim 7 of the '866 patent, and claim 1 of the '465 patent.] [**Cisco insert**:  Examples of independent claims here are claim 1 of the '465 patent, claims 1 and 2 of the '535 patent, and claim 7 of the '866 patent.]

[**Ramot insert**:  If you decide that an accused product includes all of the elements of a claim, the claim is infringed.  This is true even when the accused product contains additional elements not mentioned in the claim.] [**Cisco insert**:  If you decide that use of an accused product performs all of the elements of a claim, the claim is infringed.  This is true even when use of the accused product contains additional processes not mentioned in the claim.]

For example, if the patent claims a method using four steps, it would be infringed by a process that performs all four of those steps, even if the process adds a fifth step, such as attaching wheels to the table legs.[12]

This case involves two types of method claims: independent claims and dependent claims.

---

[11] *Ciofffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 28 (E.D. Tex. Feb. 10, 2017); *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Dkt. 166 at 17 (E.D. Tex. Mar. 23, 2017); *Rembrandt Wireless Techs., LP v. Cisco Elecs. Co. Ltd.*, Case No. 2:13-cv-213-JRG, Jury Instructions Dkt. 300 at 22 (E.D. Tex. Feb. 9, 2015).

[12] *Ciofffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 28 (E.D. Tex. Feb. 10, 2017).

An independent claim does not refer to any other claim of the patent.  An independent claim sets forth all the requirements that must be met in order to be covered by that claim.  It's not necessary to look at any other claim to determine what an independent claim covers.  Examples of independent claims here are claim 1 of the '465 patent, claims 1 and 2 of the '535 patent, and claim 7 of the '866 patent.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim depends on another claim.  The law considers a dependent claim to incorporate all of the requirements of the claims to which it refers.  The dependent claim then adds its own additional requirements.

To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. A product that meets all of the requirements of both the dependent claim and the claims to which it refers, is covered by that dependent claim. Examples of dependent claims here are claims 8, 10, 11, and 12 of the '866 patent.

[**Ramot insert**: A patent owner has the right to stop others from making, using, selling, offering for sale, or importing into the United States the invention covered by its patent claims in the United States during the life of the patent.][13]

If a person performs every step of the claimed method within the United States without the patent owner's permission, that person is said to infringe the patent.

---

[13] *Kaist IP US LLC v. Cisco Elecs. Co., Ltd.*, No. 2:16-cv-01314-JRG, Dkt. 498 at 44 (E.D. Tex. June 18, 2018).  [**Cisco's Position**: Ramot is seeking money damages, it is not seeking an injunction in this matter; therefore, this instruction will confuse and mislead the jury.  Moreover, this instruction is out of place and is not related to a description of method claims.]

## V.        Infringement Generally[14]

I will now explain infringement in detail.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted method patent claims, as I have defined each of them, to the use of the accused products, and determine whether or not there is infringement.[15]

You should not compare the accused products with any specific example set out in the patent or with the prior art in reaching your decision on infringement.[16]   The only correct comparison is between the accused products and the language of the claim itself.

You must reach your decision as to infringement based on my instructions about the meaning and scope of the Asserted Claim, the legal requirements for infringement, and the evidence presented to you by both of the parties.

Also, the issue of infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim even if there is no infringement as to other claims.

In this case, Ramot has accused Cisco of two [**Ramot replacement**: three] types of infringement.  First Ramot contends that Cisco directly infringes the Asserted Claims.  Second, Ramot contends that Cisco induces infringement by affirmatively intending to cause direct infringement of the Asserted Claim by its customers and end users.  [**Ramot Insert**: Third, Ramot contends that Cisco contributes to such infringement by its customers and end users.]

---

[14]  *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.).
[15]  *Kaist IP US LLC v. Cisco Elecs. Co., Ltd.*, No. 2:16-cv-01314-JRG, Dkt. 498 at 44-45 (E.D. Tex. June 18, 2018); *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Dkt. 166 at 19 (E.D. Tex. Mar. 23, 2017); *Implicit, LLC v. Netscout Systems, Inc.*, No. 2:18-cv-00053-JRG, Dkt. 240 at 20 (E.D. Tex. Dec. 18, 2019); *Ciofffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 29-30 (E.D. Tex. Feb. 14, 2017).
[16]  *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.).

## VI.    Direct Infringement[17]

I will now instruct you on the specific rules you must follow to determine whether Ramot has proven that Cisco has infringed each Asserted Claim.

[**Cisco insert**:  Ramot only has asserted method claims in this case.  In general, a method claim is infringed only when a single person or entity, without the patent owner's permission, performs each and every step of the method claim in the United States during the time period between when the patent issues and it expires.[18]]

In order to prove direct infringement of a patent claim, Ramot must show by a preponderance of the evidence that [**Ramot insert**: use of the accused product includes each and every requirement of the claim] [**Cisco insert**: Cisco's use of the accused products, in the United States while the patent is in force, includes performance of each and every requirement of the claim].

[**Cisco insert**: Mere sale of a product capable of performing the infringing method does not constitute infringing use of the method.[19]]

In determining whether use of an accused product directly infringes each Asserted Claim in this case, you must compare the use of the accused product with each and every one of the requirements of that claim to determine whether that use of the accused product meets each and every requirement recited in the claim.

---

[17]   *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.).

[18]   **Cisco's authority**: *Contentguard Holdings v. Samsung Elecs.*, No. 2:13-cv-1112-JRG, Sep 23, 2015 Trial Tr. at 53:20-23.

[19]   **Cisco's authority**: *Contentguard Holdings v. Samsung Elecs.*, No. 2:13-cv-1112-JRG, Sep 23, 2015 Trial Tr. at 53:24-54:3.  **Ramot** objects to the distracting complexity and repetition in Cisco's inserts to this instruction.  *Cf. Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (Dkt. 166 at 20 (E.D. Tex. Mar. 23, 2017).

A claim element is literally present if it exists in an accused product just as it is described in the claim language, either as I have explained the language to you; or if I did not explain it, as it would be understood by one of ordinary skill in the art.  If use of an accused product performs all elements recited in a claim, then you must find that that particular use literally infringes that claim.

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing was infringement of the claim.  A patent may also be directly infringed even though the accused infringer believes in good faith that what it's doing is not infringement of the patent.[20]

[**Cisco insert**: If use of an accused product is missing any element recited in a dependent claim, then you must find that the particular use does not infringe that dependent claim.  If use of an accused product does not infringe an independent claim, then that use cannot infringe any of the dependent claims that refer to that independent claim.[21]]

---

[20] Transcript of Jury Trial, *ContentGuard Holdings, Inc. v. Cisco Elecs. Co. Ltd.*, 2:14-cv-00061 (E.D. Tex. Dec. 4, 2015), Dkt. No. 445 at 55; *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Dkt. 166 at 20-21 (E.D. Tex. Mar. 23, 2017); *Kaist IP US LLC v. Cisco Elecs. Co., Ltd.*, No. 2:16-cv-01314-JRG, Dkt. 498 at 47 (E.D. Tex. June 18, 2018).
[21] **Cisco's authority**: *Rembrandt v. Samsung*, No. 2:13-cv-213, Dkt. 300 at 22 (Feb. 13, 2015).

## VII.    Indirect Infringement[22]

Ramot also alleges that Cisco indirectly infringed each Asserted Claim. **[Cisco insert**: by inducing others to infringe.]   **[Ramot insert**: There are two types of indirect infringement: inducing infringement and contributory infringement.  The act of encouraging or inducing others to infringe a patent is called "inducing infringement."  The act of contributing to the infringement of others by, for example, supplying components for use in the accused products, is called "contributory infringement."][23]

Ramot contends that Cisco is liable for infringement because it actively induces its customers and end users of the accused products to infringe the Asserted Claims

**[Ramot insert**: Cisco is liable for active inducement of a claim if Ramot proves by a preponderance of the evidence that:

(1)  the elements of at least one Asserted Claim are used by Cisco's customers and end users of the products and directly infringe that claim;

(2) Cisco took action intending to cause the infringing acts by its customers; and

(3) Cisco was aware of the Asserted Patent and knew that the acts, if taken, would constitute infringement of that patent, or Cisco believed there was a high probability that the acts, if taken, would constitute infringement of the Asserted Patent but deliberately avoided confirming that belief.]

---

[22] *SSL Services, LLC v. Citrix Systems, Inc. et al.*, No. 2:08-cv-00158-JRG, Dkt. Nos. 256, 272 (E.D. Tex.) (Gilstrap, J.).

[23] As stated above, Cisco's position is that Ramot has waived its right to assert contributory infringement by not providing any discovery responses alleging contributory infringement and by not providing any expert testimony in support of contributory infringement.  As stated above, Ramot asserts that it provided proper notice of its contributory infringement allegations, which appear, *inter alia*, in its complaints (*see, e.g.*, Dkt. 48 at ¶¶ 2, 43, 56, 69) and can be proven with fact evidence concerning Cisco's knowledge and the nature of the accused products.  Cisco is mischaracterizing the record, and does not have a motion *in limine* directed to contributory infringement.

[**Cisco insert**: To prove that Cisco actively induced patent infringement, Ramot must prove by a preponderance of the evidence that:

(1)  the infringing use is carried out by a customer in the United States and the customer's use of the accused products directly infringes an Asserted Claim;[24]

(2) that Cisco took action during the time the patent was in force intending to cause the infringing acts by one or more customers and led to the infringing acts by one or more customers; and

(3) that Cisco was aware of the Asserted Patents and knew that the acts, if taken, would constitute infringement of those patents.

If you find that Cisco was aware of the Asserted Patents, but Cisco believed the acts it encouraged did not infringe the Asserted Patents, Cisco cannot be liable for inducement.][25]

The third element, Cisco's awareness of the infringement of the Asserted Patents, can be met if Cisco was directly aware of the infringement or if Cisco was willfully blind to the infringement.[26] To prove willful blindness, Ramot must prove by a preponderance of the evidence that Cisco believed there was a high probability that that Cisco's customers were directly infringing the Asserted Claims by engaging in acts induced by Cisco and that Cisco took deliberate acts to avoid confirming that high probability.[27]]

---

[24] **Cisco's authority**: *Innovation Sciences, LLC v. Amazon*, No. 4:18-cv-474, Dkt. 845 at 15 (Sep. 2, 2020) (Judge Mazzant)

[25] **Cisco's authority:** *Navico v. Garmin*, No. 2:16-cv-190, Final Jury Instructions at 14; *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015).

[26] *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920 (2015); *Ciofffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 32-33(E.D. Tex. Feb. 10, 2017); *SSL Services, LLC v. Citrix Systems, Inc. et al.*, No. 2:08-cv-00158-JRG, Dkt. No. 272 at 40 (E.D. Tex. June 18, 2012).

[27] Cisco objects to inserting instructions regarding willful blindness, as Ramot has made no showing of willful blindness in this case.  To the extent that the Court issues a willful blindness instruction, Cisco asks that the Court add this additional language, based on the this authority**:** *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 769 (2011); *Packet Intelligence LLC v.*

[**Ramot's insert**: In order to establish active inducement of infringement, it is not sufficient to find that Cisco's customers and end users directly infringe the claim.  Nor is it sufficient to find that Cisco was aware of alleged direct infringement by Cisco's customers and end users.[28]  Rather, in order to find that Cisco induced infringement, you must find that Cisco specifically intended its customers and end users to infringe the Asserted Patent or that Cisco believed there was a high probability of such infringement but remained intentionally blind to the infringing nature of these acts.  Any belief held by Cisco as to the validity of the Asserted Claim bears no weight on deciding induced infringement.[29]]

[**Cisco's insert**: To establish active inducement of infringement, Ramot must prove actual acts of direct infringement by Cisco's customers on a claim-by-claim and product-by-product basis.  It is not sufficient that Cisco's customers directly infringe the claim.  Nor is it sufficient that Cisco merely had knowledge or notice of an Asserted Patent or was aware of acts by the customer that allegedly constitute direct infringement.  Rather, you must find that Cisco specifically intended its customers to infringe the claim in order to find active inducement of infringement.  The mere fact, if true, that Cisco knew or should have known that there was a substantial risk that its customers' acts would infringe claims of the Asserted Patents is not sufficient for active inducement of infringement.[30]

---

*Netscout Sys., Inc. et al*, No. 2:16-cv-230-JRG, Dkt. 252, Oct 13, 2017 Trial Tr. at 29:16-22.  **Ramot** has asserted since the beginning of this case that Cisco's infringement has been willful, and expects that the trial record will have ample evidence from which the jury can find willful blindness.

[28] *Implicit, LLC v. Netscout Systems, Inc.*, No. 2:18-cv-00053-JRG, Dkt. 240 at 22 (E.D. Tex. Dec. 18, 2019); *Ciofffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 33 (E.D. Tex. Feb. 10, 2017); *SSL Services, LLC v. Citrix Systems, Inc. et al.*, No. 2:08-cv-00158-JRG, Dkt. No. 272 at 40 (E.D. Tex. June 18, 2012).

[29] *Commil USA, LLC v. Cisco Sys.*, 135 S.Ct. 1920, 1928 (2015).

[30] **Cisco's authority:** *Navico v. Garmin*, No. 2:16-cv-190, Final Jury Instructions at 14.

Ramot must also prove that Cisco undertook affirmative acts to encourage infringement. Evidence of mere inaction, or a failure to stop or prevent infringement, does not constitute active inducement.][31]

[**Ramot insert**: Ramot also contends that Cisco is liable for infringement because it contributes to the direct infringement of the asserted claim.

Cisco is liable for contributory infringement of a claim if Ramot proves by a preponderance of the evidence that:

(1) Cisco makes, sells, or offers to sell in the United States, or imports into the United States accused products that include an accused feature, during the time the asserted patents are in force;

(2) the accused feature constitutes a material part of the invention of an asserted claim;

(3) the accused feature, when operated in the intended manner, has no substantial, non-infringing uses;

(4) Cisco was aware of the asserted patent and knew that the products for which the accused feature was used could be covered by an asserted claim either literally or under the doctrine of equivalents; and

(5) end users and consumers in the United States use the invention of the asserted device claim.[32]

---

[31] **Cisco's authority:** *Tecsec, Inc. v. Adobe, Inc.*, No. 19-2192, slip op. at 18 (Fed. Cir. Oct. 23, 2020) (affirming jury instruction stating inducement requires "an affirmative act to encourage infringement" and "evidence of mere inaction, or a failure to stop or prevent infringement, does not constitute inducement").

[32] *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320-21 (Fed. Cir. 2009). *Ciofffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 33-34 (E.D. Tex. Feb. 10, 2017); *SSL Services, LLC v. Citrix Systems, Inc. et al.*, No. 2:08-cv-00158-JRG, Dkt. No. 272 at 41 (E.D. Tex. June 18, 2012).

In order to prove contributory infringement, Ramot must prove each of the above requirements is met. This proof must be by a preponderance of the evidence.][33]

[**Cisco Insert:** Ramot contends that Cisco is liable for contributory infringement because it contributes to its own customers' direct infringement of the Asserted Claims.

Cisco is liable for contributory infringement on an asserted claim if Ramot proves each of the following by a preponderance of the evidence:

(1)  Cisco sold or offered to sell within the United States or imported into the United States a component for use in a product during the time the asserted patent was in force,

(2) The component has no substantial non-infringing use,

(3) The component constitutes a material part of the invention,

(4)  Cisco supplied the component with the knowledge of the Asserted Patents and knowledge that the component was especially made or adapted for use in an infringing manner, and

(5) end users in the United States use the invention of the asserted claim, and this use directly infringes the asserted claims.][34]

---

[33] As stated above, Cisco's position is that Ramot has waived its right to assert contributory infringement by not providing any discovery responses alleging contributory infringement and by not providing any expert testimony in support of contributory infringement.  As stated above, Ramot asserts that it provided proper notice of its contributory infringement allegations, which appear, *inter alia*, in its complaints (*see, e.g.*, Dkt. 48 at ¶¶ 2, 43, 56, 69) and can be proven with fact evidence concerning Cisco's knowledge and the nature of the accused products.  Cisco is mischaracterizing the record, and does not have a motion *in limine* directed to contributory infringement.

[34] *Cioffi v. Google*, No. 2:13-cv-103-JRG, Dkt. 272 at 33-34 (Feb. 10, 2017) (modified); 35 U.S.C. §271(c).  Cisco maintains its objection to including instructions as to contributory infringement, but submits this competing proposal to correct erroneous representations of the law in Ramot's instructions.

## VIII.   Willfulness[35]

[**Ramot insert**: In this case, Ramot also contends that Cisco has willfully infringed the Asserted Patents. If you have decided that Cisco has infringed an Asserted Claim, either directly or indirectly, you must go on and address the additional issue of whether or not Cisco's infringement was willful.

You may find that Cisco willfully infringed if you find that Cisco acted willfully, deliberately, or intentionally, or if Cisco acted in reckless or callous disregard of, or with indifference to, the rights of Ramot, including if Cisco knew or had reason to know of facts which would lead a reasonable person to realize its actions are unreasonably risky.[36] A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement of those rights that is known to the defendant or would be apparent to a reasonable person in its position.]

[**Cisco insert**: In this case, Ramot argues that Cisco willfully infringed the Asserted Patents.

To prove willfulness, Ramot must persuade you that the Cisco infringed a valid claim of the Asserted Patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Ramot must persuade you that it is more likely true than not true that Cisco intentionally ignored or recklessly disregarded that claim.

---

[35] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Dkt. 166 at 22-23 (E.D. Tex. Mar. 23, 2017); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1377-79 (Fed. Cir. 2020).

[36] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Dkt. 166 at 22-23 (E.D. Tex. Mar. 23, 2017); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1377-79 (Fed. Cir. 2020).

You must base your decision on Cisco's knowledge and actions at the time of infringement. Evidence that Cisco had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that the Cisco engaged in additional conduct evidencing deliberate or reckless disregard of Ramot's patent rights.

In deciding whether Cisco willfully infringed, you should consider all of the facts surrounding the infringement including: whether Cisco intentionally copied Ramot's patented technology in developing the accused products; whether Cisco knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Cisco had a reasonable belief that at the time of infringement that its products did not infringe the Asserted Patents or that the Asserted Patents were invalid.][37]

Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial.

If you decide that any infringement was willful, that decision should not affect any damages award that you might make.  I will take willfulness into account later.[38]

[**Ramot insert**: Ramot has the burden of proving willfulness by a preponderance of the evidence.]

---

[37] N.D. Cal. Model Patent Jury Instructions, § 3.8 Willful Infringement.
[38] *Biscotti Inc. v. Microsoft Corp.*, 2:13-cv-1015-JRG-RSP, Dkt. 286 (E.D. Tex. June 16, 2017); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

## IX.    Person of Ordinary Skill in the Art[39]

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.  It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including:

1.  the levels of education and experience of persons working in the field;

2.  the types of problems encountered in the field;

3.  prior art solutions to those problems;

4.  rapidity with which innovations are made; and

5.  the sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to have known all of the relevant prior art at the time of the claimed invention.

---

[39] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.).

## X.      [Ramot insert: Invalidity – Generally[40]

I will now instruct you on the rules that you must follow in deciding whether or not Cisco has proven that the asserted claims of the asserted patents are invalid.

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've often heard referred to throughout the trial as the Patent Office or PTO, acted correctly in issuing the patent.  This presumption of validity extends to all issued United States patents.

To prove that any claim of a patent is invalid, Cisco must persuade you by clear and convincing evidence that the claim is invalid.  Like infringement, invalidity is determined on a claim-by-claim basis.  You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid. Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.  In making your determination as to invalidity, you should consider each claim separately.

Now, during the course of the trial, Cisco has presented you with prior art references.  The fact that any particular reference was or was not considered by the Patent Office does not change Cisco's burden of proof.  Cisco must still prove invalidity by clear and convincing evidence.][41]

---

[40] Ramot contends that a general invalidity instruction is appropriate here, just as a general infringement instruction is above.  *See, e.g., Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG, Dkt. 166 at 23-24 (E.D. Tex. Mar. 23, 2017); *Cioffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 34-35 (E.D. Tex. Feb. 14, 2017).

[41] *Cioffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 35 (E.D. Tex. Feb. 14, 2017).

## XI.     Invalidity – Anticipation[42]

Cisco contends that the Asserted Claims of Ramot's patents are invalid because the claimed inventions are not new.  For a claim to be invalid because it is not new, all of its limitations or elements must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, such a previous publication or patent is called a "prior art reference" or "prior art item."  If a patent claim is not new, we say it is "anticipated" by the single prior art reference.

In determining whether or not the invention is invalid, you must determine the scope and content of the prior art at the time the invention was made.[43]

Cisco may not combine two or more items of prior art to make out anticipation.  Cisco must prove that the claim was anticipated by that single prior art reference.  Prior art references do not anticipate a claim unless one skilled in the art would reasonably understand from the reference's or item's teaching that every claim limitation was disclosed in that single reference or item.  The disclosure in the prior art does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated expressly or inherently, so that someone of ordinary skill in the field looking at that one prior art reference or item would be able to make and use the claimed invention.

Here is a list of the ways that Cisco can show that a patent claim was not new: if the claimed invention was already patented or described in a printed publication anywhere in the world before the date of invention, or was described in a printed publication anywhere in the world more than one year before the earliest effective filing date of the patent containing the claimed invention.

---

[42] *Dataquill Ltd. v. ZTE Corp.*, No. 2:13-cv-634-JRG, Final Jury Instructions (E.D. Tex.)
[43] *Ciofffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 36 (E.D. Tex. Feb. 14, 2017).

[**Cisco Insert:** An inventor's own publications, if published more than one year before the filing date of the application containing the claimed invention, will anticipate a patent claim if they describe the claimed invention.][44]

If you find that Cisco has proven by clear and convincing evidence that a patent claim is anticipated as explained above, you must find that claim invalid.

## XII.    Invalidity – Obviousness

Cisco contends in this case that the Asserted Claims of the Asserted Patents are invalid as being obvious.  Even though an invention may not have been disclosed or described in a single prior art reference before it was made by an inventor, the invention may have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. [**Ramot insert**: Cisco bears the burden of establishing obviousness by clear and convincing evidence.]

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention, as well as the ordinary knowledge of the person of ordinary skill at the time of the invention.  [**Cisco insert**: Further, you may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art before the filing dates of the patents.  A person of ordinary skill in the art is a person of ordinary creativity that can use common sense to solve problems.[45]  They would be able to fit the

---

[44] *SSL Services, LLC v. Citrix Systems, Inc. et al.*, No. 2:08-cv-00158-JRG, Dkt. No. 272 at 46 (E.D. Tex. June 18, 2012).

[45] *DataQuill v. Huawei*, Case No. 2:13-cv-633-JRG, Final Jury Instr. at 13 ("However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would

teachings of multiple patents together like a puzzle.[46] The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.]

The skill of the actual inventor is not necessarily relevant because inventors may possess something that distinguishes them from workers of ordinary skill in the art.  Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all inventions, rely on the building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, as of the priority date of the Asserted Patent, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account such facts as:

1. Whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. Whether the prior art teaches or suggests the desirability of combining elements in claimed in the invention;

---

employ."); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-21 (2007) ("A person of ordinary skill is also a person of ordinary creativity, not an automaton.").

[46] *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-21 (2007) ("It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be  able  to fit the teachings  of multiple patents **together like pieces of a puzzle**."); *SSL v. Citrix*, Case No. 2:08-cv-158-JRG, Dkt. No. 256, at 24 (June 18, 2012) ("The scope and content of  prior  art  for  deciding  whether  the  invention  was  obvious  includes  prior  art  in the  same  field  as  the  claimed  invention,  regardless  of  the  problem  addressed  by  the  item or reference, and  prior art from different fields that a person of ordinary skill in the art **using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle**.")

4.  Whether the prior art teaches away from combining elements in the claimed invention;

5.  Whether it would have been obvious to try the combinations of elements in the claimed invention, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified, predictable solutions; and

6.  Whether the change resulted more from design incentives or other market forces.

In determining whether the claimed invention was obvious, consider each claim separately, and consider only what was known at the time of the invention.  [**Cisco's Insert**: To find that prior art rendered the invention obvious, you must find that a person of ordinary skill in  the  art  would have been motivated to combine the teachings of the prior art to achieve the claimed invention, and would have had a reasonable expectation of success in doing so.]

[**Ramot insert**: In determining whether the claimed invention was obvious, do not use hindsight.  In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the patents-in-suit.

Many true inventions can seem obvious after the fact, and, therefore, it's impermissible for you to use hindsight.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.  In other words, you cannot look at the invention knowing what a person of ordinary skill in the art knows today, and you

cannot use the Ramot patents as a blueprint to piece together the prior art in order to combine the right ones in the right way as to create the claimed invention.[47]][48]

In making these assessments, ladies and gentlemen, you should take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention, and afterwards, that may shed light on non-obviousness.  The following are possible secondary considerations, but it is up to you to decide whether secondary considerations of non-obviousness exist at all:

1.  Whether the invention was commercially successful as a result of the merits of the claimed invention, rather than the result of design needs or market pressure, advertising, or similar activities;

2.  Whether the invention satisfied a long-felt need;

3.  Whether others had tried and failed to make the invention;

4.  Whether others copied the invention;

5.  Whether there were changes or related technologies or market needs contemporaneous with the invention;

6.  Whether the invention achieved unexpected results;

---

[47] *See Dataquil Ltd. v. ZTE (USA) Inc.*, No. 2:13-CV-634-RSP-RSG, Dkt. No. 44 (Trial Transcript, Jury Charging) at 27-29.  *See also Nichia Corp. v. Everlight Elecs. Co.*, No. 02:13-CV-702-JRG, 2016 WL 310142, at *62 (E.D. Tex. Jan. 25, 2016) ("the obviousness analysis must be performed without the benefit of hindsight. Thus, it is impermissible to use the patented invention as a blueprint or template to perform a hindsight reconstruction of the invention from prior art elements. Using the invention as a roadmap to re-create the invention from the prior art would improperly discount the value of combining various existing features or principles in a new way to achieve a new result, which is often the very essence or definition of invention.  Similarly, the motivation to combine references cannot come from the invention itself.") (citations omitted).

[48] Cisco objects to inserting a reference to hindsight here, as it is subsumed in the statements stating that a person of skill in the art would be motivated to combine elements in the prior art at the time of the invention.

7.     Whether others in the field praised the invention;

8.     Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

9.     Whether others sought or obtained rights to the patent from the patent-holder; and

10.     Whether the inventor proceeded contrary to accepted wisdom in the field.

In support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it.  If you find that Cisco has proved the obviousness of a claim by clear and convincing evidence, then you must find that the claim is invalid.

## XIII.   Validity – Written Description

Cisco contends that the Asserted Claims of the Asserted Patents are invalid for the failure to satisfy the written description requirement.  **[Cisco insert**: A patent must contain an adequate written description of the claimed method, meaning that the patent specification must describe each and every limitation of the method claim, in sufficient detail, although the exact words used in the claim need not be used in the specification.  The written description requirement helps to ensure that the patent applicant actually invented what is claimed; in other words, that the patent inventor possessed the claimed invention at the time the patent application was filed.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the full scope of the claimed invention at the time the patent application was filed.  A claim is not invalid on written description grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language.  In considering the scope of a claim, you may take into account what Ramot asserts to fall within the full scope of the patent claim for purposes of infringement.

To satisfy the written description requirement, it is not enough that undisclosed subject matter would have been obvious to a person of ordinary skill in the art. Your analysis of the written description requirement must be based on what is disclosed in the specification of the Asserted Patents.  Ramot cannot satisfy the written description requirement for a particular patent by using things disclosed in the specification of a different patent.[49]

---

[49] *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1322 (Fed. Cir. 2017) ("[T]he written description inquiry looks to 'the four corners of the specification' to discern the extent to which the inventor(s) had possession of the invention as broadly claimed.  The knowledge of ordinary artisans may be used to inform what is actually in the specification, but not to teach limitations that  are not  in  the  specification,  even  if  those  limitations  would  be  rendered  obvious  by  the

In evaluating whether the specification has provided an adequate written description, you may take into account such factors as:

(1)     the nature and scope of the patent claims;

(2)     the complexity, predictability, and maturity of the technology at issue;

(3)     the existing knowledge in the relevant field; and

(4)     the scope and content of the prior art.

If you find that Cisco has proven by clear and convincing evidence that the Asserted Patents do not provide adequate written description for the full scope of any Asserted Claim, then you must find that claim invalid.]

[**Ramot insert:** The written description is adequate if it shows that the inventor was in possession of the claim of the invention at the time the application for the patent was filed, even though the claim may have been changed or added during the prosecution of the patent. The written description may be satisfied by the words, structures, figures, diagrams, formulas, etc., in the patent application, and any combination of them, as understood by one of ordinary skill. It is not necessary that each and every aspect of the claim be explicitly discussed, as long as a person of ordinary skill would understand that any aspect not expressly discussed is implicit or inherent in the patent application.[50] A claim is not invalid on written description grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language.]

---

disclosure in the specification."); *see also Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) ("And while the description requirement does not demand any particular form of disclosure, or that the specification recite the claimed invention *in haec verba*, a description that merely renders the invention obvious does not satisfy the requirement.").

[50] *DataQuill v. Huawei*, Case No. 2:13-cv-633-JRG, Prop. Final Jury Instr. at 20 (Dkt. 153-2).

## XIV.   Invention Date – Effective Filing Date[51]

Ramot contends that the Asserted Patents are entitled to an effective filing date of June 13, 2007, based on the filing of a provisional patent application.

[**Cisco insert**: A patent is entitled to claim priority to an earlier-filed provisional application if the earlier-filed application contains an adequate written description, meaning that the patent specification must describe each and every limitation of the method claim, in sufficient detail, although the exact words used in the claim need not be used in the specification.   These are the same requirements for written description that I explained earlier.   But here, it is Ramot's burden to show, by a preponderance of the evidence, that the provisional application provides written description support for each claim for which it asserts an earlier filing date.

Cisco contends that the Asserted Patents are not entitled to a priority date of June 13, 2007, and that the following items and references are prior art to all Asserted Claims:

1.      "Improved Digital-to-Analog Conversion Using Multi-Electrode Mach-Zehnder Interferometer," Y. Ehrlichman et al., Journal of Lightwave Technology (Nov. 1, 2008) ("Ehrlichman I")

2.      "Photonics Digital to Analog Conversion," Y. Ehrlichman et al., 2008 IEEE Convention of Electrical and Electronics Engineers in Israel (Dec. 3-5, 2008) ("Ehrlichman II")

You must consider these references as prior art to the asserted claims unless you find that Ramot is entitled to claim priority to the June 13, 2007 provisional patent application for a given claim.  If you find that Ramot is entitled to claim priority to the provisional application, you may

---

[51] *DataQuill v. Huawei*, Case No. 2:13-cv-633-JRG, Final Jury Instr. at 16-18; *Mobile Telecomms. Techs., LLC v. Samsung Telecomms. Am., LLC*, No. 2:13-cv-259, Dec. 18, 2014 Trial Tr. at 30:15-32:3.

not consider these references as prior art to that claim.  However, these references are prior art to claim 2 of the '535 Patent.]

[**Ramot insert**[52]: An issued patent is given the benefit of the earlier filing date of its provisional application if (1) the provisional application contains a written description of the invention claimed in the issued patent, and (2) the subject matter relied upon in the issued patent is supported by the provisional application.[53] As I just described, the written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, et cetera, contained in the provisional application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the provisional application if a person having ordinary skill would have understood that the full scope or the missing requirement is in the written description of the provisional application. It's not necessary that each and every aspect of the claim in the issued patent be explicitly discussed, and specific examples of what is claimed are not required as long as a person having ordinary skill would understand that any aspect not expressly discussed is implicit in the provisional application as originally filed.[54]]

## XV.    Invention Date - Conception[55]

For the purpose of your analysis of the prior art, Ramot contends that it is entitled to a date of invention earlier than the June 13, 2007 filing date of the provisional application.  Ramot contends that it is entitled to a July 9, 2006 invention date.

---

[52] Ramot believes that this instruction should not be a separate section, which the jury may find confusing, but rather integrated into the general instruction on invalidity that Ramot has proposed. Nevertheless, to ease the comparison for the Court, Ramot has submitted its proposal herein.
[53] *Optis Wireless Tech., LLC, et al. v. Huawei Techs. Ltd., et al.*, No. 2:17-cv-123-JRG-RSP, Final Jury Instructions at 17 (E.D. Tex.).
[54] *Optis Wireless Tech., LLC, et al. v. Huawei Techs. Ltd., et al.*, No. 2:17-cv-123-JRG-RSP, Final Jury Instructions at 17-18 (E.D. Tex.).
[55] *DataQuill v. Huawei*, Case No. 2:13-cv-633-JRG, Final Jury Instr. at 16-18.

A date of invention that is earlier than the effective filing date can be established if Ramot establishes by a preponderance of the evidence that the inventors conceived of the invention on an earlier date and they diligently reduced the invention to practice. [**Ramot insert**: Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial.] Diligence means working continuously from the date of conception until the filing of the patent application, though not necessarily every day. [**Cisco insert**: It is Ramot's burden to show conception and diligence in reducing the invention to practice, both by a preponderance of the evidence.

Conception is the mental part of an inventive act. In other words, the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice, even if the inventor does not know at the time the invention would work.

Conception of an idea is complete when the idea is so clearly defined in the inventor's mind that if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.

This requirement does not mean that the inventor has to have a prototype built or actually explained his or her invention to another person. But there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.

Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

The claimed invention is reduced to practice when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application.

An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention, if it is has been fully described in a filed patent application and the inventor was diligent in preparing the patent application.

Cisco contends that the following reference is prior art to all Asserted Claims: U.S. Patent Application No. 2008/0232820 ("Burchfiel").  You must consider this reference as prior art to the Asserted Claims unless you find that Ramot has shown by a preponderance of the evidence both that (i) Ramot is entitled to claim priority to the filing date of the provisional application for any given Asserted Claim and (ii) Ramot has established a date of conception at least as early as July 9, 2006, followed by a diligent reduction to practice.  If you find that Ramot has shown by a preponderance of the evidence that it is entitled to claim an invention date (meaning both conception followed by diligent reduction to practice) of as early as July 9, 2006 for an Asserted Claim, you may not consider this reference to be prior art to that claim.]

## XVI.   Damages – Generally[56], [57]

If you find that Cisco has infringed any Asserted Claim of Ramot's Asserted Patents, and if you find that the claim is not invalid, then you must consider what amount of damages to award to Ramot.

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue.  **[Cisco insert**: My instructions

---

[56] Kaist IP US LLC v. Cisco Elecs. Co., Ltd., No. 2:16-cv-01314-JRG, Dkt. 498 at 60-68 (E.D. Tex. June 18, 2018); Whirlpool Corp. v. TST Water, LLC, No. 2:15-CV-1528-JRG (E.D. Tex.).
[57] Cisco edits come from the Final Jury Instructions, *Dataquill Ltd. v. Huawei Technologies Co.*

about damages are for your guidance only in the event you find in favor of Ramot. You will need to decide the issue of damages only if you find that one or more of the Asserted Claims are both valid and infringed.]

Ramot has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only the damages that Ramot establishes that it more likely than not to have suffered.  While the patent owner is not required to prove damages with mathematical precision, the patent owner is not entitled to damages that are remote or speculative and it must prove them with reasonable certainty.]

The damages you award **[Cisco insert**:, if you reach this issue,] must be adequate to compensate Ramot for any infringement you may find.  You must not award Ramot more damages than are adequate to compensate for the infringement, nor should you include any additional amount for the purpose of punishing Cisco or setting an example.

[**Ramot insert**: Ramot has the burden to establish the amount of its damages by a preponderance of the evidence.  The patent owner is not entitled to damages that are remote or speculative.

I'll give more detailed instructions regarding damages shortly.  Note, however, that if you determine that the patent is infringed and not invalid, Ramot is entitled to recover no less than a reasonable royalty for each infringing sale or use of its inventions

This determination of a damages award is not an exact science, and the amount need not be proven with unerring precision.  You may approximate, if necessary, the amount to which

---

*Ltd*., Case No. 2:13-cv-633-JRG (Lead Case) (E.D. Tex.); Final Jury Instructions, *Innovation Sciences, LLC v. Amazon.com, Inc*., Civil Action No. 4:18-cv-474 (E.D. Tex.) (Mazzant, J.); *Biscotti Inc. v. Microsoft Corp*., Case No. 2:13-cv-01015-JRG, Dkt. 294 (E.D. Tex. June 16, 2017).

Ramot is entitled.  It is proper to award a damages amount if the evidence shows the extent of damages as a matter of just and reasonable inference.[26]]

## XVII.  Damages – Reasonable Royalty

[**Ramot insert**: A reasonable royalty is the minimum amount of damages that a patent owner may recover.  A royalty is the amount of money a licensee pays to a patent owner for each article the licensee makes or uses or sells under the patent.  A reasonable royalty is an amount of money a willing patent owner and a willing prospective licensee would have agreed upon at a hypothetical negotiation at the time Cisco began infringing the Asserted Patents.  The parties agree that this date is July 24, 2018.]

[**Cisco insert**: In this case, Ramot seeks a reasonable royalty.  A reasonable royalty is defined as the amount of money a willing patent owner and a willing prospective licensee would have agreed upon right before the infringement began for a license to make, use, or sell the invention.  This date is oftentimes called the hypothetical negotiation date.

In determining the amount of a reasonable royalty that the parties would have agreed to at the hypothetical negotiation, you must first determine when the damages began.  If you find that Cisco directly infringes a patent, then damages for that patent commence on the first date of that Cisco used that product in the United States.  If you find that Cisco indirectly infringes a patent, by way of inducing its customers to infringe, then damages commence on the date that Ramot has proven that Cisco had knowledge of the patent, and with knowledge of that patent, Cisco induced

---

[26] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.); *Rembrandt Wireless Techs., LP v. Cisco Elecs. Co. Ltd.*, No. 2:13-cv-213-JRG, Dkt. 300 at 36 (E.D. Tex. Feb. 13, 2015); *ContentGuard Holdings, Inc. v. Cisco Elecs. Co. Ltd.*, No. 2:14-cv-00061, Dkt. 445 at 71 (E.D. Tex. Dec. 4, 2015).

on of its Cisco's customers to use an accused product to practice the claimed method.  I will provide additional details on how to calculate damages for inducement shortly.]

The reasonable royalty you determine must be the royalty that would have resulted from this hypothetical negotiation and not simply the royalty that either party would have preferred. Your focus should be on what the expectations of Ramot and Cisco would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.   In determining this, you must assume that Ramot and Cisco both believed the patent was valid and infringed, and that the parties were willing to enter into an agreement.

[**Ramot insert**: In making your determination about the amount of a reasonable royalty, it's important that you focus on the time period when Cisco first infringed the patent and the facts that existed at that time.  Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations.  You are to assume that Cisco is willing to pay.  Your focus should be on what the parties' expectations would have been had they entered into negotiations for royalties at the time of the infringing activity, assuming there is infringement, and the patent is valid.  You may consider sales expectations at the time the infringement began as a basis for royalty rate.  You may also consider the actual profits subsequently earned in the infringement period, but only in an indirect and limited way as some evidence bearing on a directly relevant inquiry into anticipated profits.]

[**Cisco insert**:  In making your determination about the amount of a reasonable royalty you should consider all of the facts known or available to the parties at the time just before the infringement began.]

Evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty

would have resulted from a hypothetical negotiation at that time.  [**Ramot insert**: Although evidence of the actual profits an infringer made may be considered in determining a reasonable royalty at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.][58]

Where the parties dispute a matter concerning damages for infringement, it is Ramot's burden to prove what is more probable than not.

A reasonable royalty can take the form of a running royalty or a fully paid-up lump-sum royalty.  A running royalty is a fee that is paid for the right to use the patent that is paid for each unit of the infringing product sold.  A paid-up lump-sum is when the infringer pays a single price for a license covering both past and future infringing sales.  If you find Ramot is entitled to damages, you must determine whether the parties would have agreed to a running royalty or a fully paid-up lump-sum royalty at the time of the hypothetical negotiation.

The amount you find as damages must be based on the value attributable to the patented technology as distinct from other unpatented features of the accused product.  A patentholder should only be compensated for the approximate incremental value derived from his invention. The royalty must reflect the value attributable to the infringing features of the product.  If unpatented features contribute to the value of an accused product, you must apportion that value to exclude any value attributable to unpatented features.  The Plaintiff, Ramot, bears the burden to establish amounts attributable to the patented features.  [**Cisco insert**: That is, Ramot must give evidence tending to separate or apportion between the patented features and the unpatented features, and such evidence must be reliable and tangible and not conjectural or speculative.]

---

[58] Cisco objects to this instruction as unhelpful and misleading, as Ramot's damages model is not predicated on Cisco's alleged profits.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors you may consider in making your determination are:

[**Ramot insert**:

(1) whether the patent owner had an established royalty for the invention; in the absence of such licensing history, any royalty arrangements that were generally used and recognized in the particular industry at the time;

(2) the nature of the commercial relationship between the patent owner and the licensee, such as whether they were competitors or whether their relationship was that of inventor and promoter;

(3) the established profitability of the patented product, its commercial success, and its popularity at the time;

(4) whether the patent owner had an established policy of granting licenses or retaining the patented invention as his exclusive right, or whether the patent owner had a policy of granting licenses under special conditions designed to preserve his monopoly;

(5) the size of the anticipated market for the invention at the time the infringement began;

(6) the duration of the patent of the license, as well as the terms and scope of the license, such as whether it is exclusive or non-exclusive or subject to territorial restrictions;

(7) the rates paid by the licensee for the use of other patents comparable to the Plaintiff's patent;

(8) whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his non-patented items;

(9) the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

(10) the extent to which the infringer used the invention and any evidence probative of the value of such use;

(11) the portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions;

(12) the portion of the profits that should be credited to the invention as distinguished from the non-patented elements, the manufacturing process, business risk, or significant features or improvements added by the infringer;

(13) the opinion and testimony of qualified experts of the patentholder; and

(14) the amount that a licensor, such as the patentee, and a licensee, such as the infringer, would have agreed upon at the time the infringement began if both sides had been reasonably and voluntarily trying to reach an agreement; that is, what amount a prudent licensee who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.] [59]

[**Cisco insert**:

(1) the royalties received by Ramot for licensing the patents-in-suit to others, proving or tending to prove an established royalty;

(2) royalties paid by Cisco for the use of other patents comparable to the Asserted Patents;

---

[59] Cisco objects to this delineation of the *Georgia-Pacific* factors, which is incomplete and misleading.

(3) the nature and scope of the license as an exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to the parties to whom the manufactured product may be sold;

(4) whether or not the licensor had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

(5) the commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory or in the same line of business or whether they are inventor and promoter;

(6) the effect of selling the patented product in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of its non-patented items, and the extent of such collateral sales;

(7) the duration of the patent and the term of the license;

(8) the profitability of the patented invention and whether or not it is commercially successful or popular;

(9) the utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results;

(10) the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

(11) the extent of the licensee's use of the patented invention and any evidence probative of the value of that use;

(12) the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

(13) the portion of the realizable profits that is due to the patented invention as compared to the portion of the profits due to other factors, such as unpatented elements or unpatented manufacturing processes or features or improvements developed by the licensee;

(14) the opinion and testimony of qualified experts;

(15) the amount that a licensor and licensee would have agreed upon at the time the infringement began, if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount that a prudent licensee would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a patent owner, if it would have been willing to grant a license.]

None of these factors is dispositive, and you can and you should consider the evidence that has been presented in this case on each of these factors.  You may also consider any other factors which in your minds would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept acting as normally prudent business people.

[**Ramot insert**: You are permitted to consider all the benefits conferred to Cisco through its infringement of the Asserted Patents, including evidence of cost savings that Cisco has achieved and can expect to achieve through its use of the Asserted Patents.[60]  A reasonable royalty can exceed profits expected by the patentee.  In determining a reasonable royalty, you may also consider evidence concerning the availability or lack thereof of non-infringing alternatives to the patented invention.]

---

[60] Cisco objects to this instruction, which is an incorrect and misleading attempt to call attention to Ramot's damages model, as opposed to instruct the jury as to the law that it must follow.

47

## XVIII. [Cisco insert: Damages – Government Use[61]

Whenever an invention described in and covered by a patent of the United States is used by the United States government without a license, the patent owner's only remedy shall be an action against the United States.  Therefore, if you find that Cisco infringes, sales of a product used by the United States government should not be included in any damages calculation you perform.][62]

## XIX.   [Cisco insert: Damages – Calculating Damages in Cases of Inducement[63]

To recover damages for induced infringement, Ramot must prove acts of direct infringement by others that were induced by Cisco. Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Ramot must further prove the number of direct acts of infringement of the patents, for example, by showing individual acts of direct infringement by users of the accused products.][64]

---

[61]   *Final Jury Instructions, Finjan Software, Ltd. v. Secure Computing Corp.*, Case No. 06-cv-369-GMS, Dkt. 225 (D. Del. Mar 12, 2008) (Jury Instruction No. 34, Government Sales)*; Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1277-78 (Fed. Cir. 2015).

[62]   Ramot objects to any such instruction, including for the reasons outlined in its Motion for Partial Summary Judgment as to Cisco System, Inc.'s Fourth and Fifth Affirmative Defenses. But even should Ramot's motion be denied, a specific instruction on this subsidiary issue is unnecessary, confusing, and unsupported by Cisco's alleged authority (*Whirlpool Corp.*, 2:15-CV-1528-JRG).

[63]   N.D. Cal. Model Patent Jury Instruction 5.11, Rev. Aug. 2017 (updated Oct. 2019) (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348 (Fed. Cir. 2009)).

[64] Ramot objects to a separate damages instruction for inducement as unnecessary, confusing, and incorrect as a matter of law. *See e.g.,* N.D. Cal. Model Patent Jury Instruction 5.11, Rev. Aug. 2017 (updated Oct. 2019) (making clear that patent holder may also prove the number of direct acts of infringement "by showing that a particular class of [products] [uses] directly infringes."). The Court has already instructed the jury on indirect infringement. No further instruction in the context of damages is warranted or necessary. *See e.g.*, *Cioffi v. Google, Inc.*, No. 2:13-cv-103-JRG, Dkt. 272 at 32-34, 47-53 (E.D. Tex. Feb. 14, 2017) (involving claims of inducement but not including the sort of specific damages instruction that Cisco proposes and will confuse the jury).

With those instructions, we are ready to hear closing arguments from the attorneys in this case.

[ATTORNEYS PRESENT CLOSING ARGUMENTS]

## XX.    Post-closing Summary[65]

I would now like to provide you with a few final instructions before you begin your deliberations.  You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer the questions in the verdict form based on the facts as you find them from this case, following the instructions that the Court has given you on the law.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  This is true in patent cases between corporations, partnerships, or individuals.  A patent owner is entitled to protect its patent rights under the United States Constitution.  This includes bringing suit in a United States District Court for money damages for infringement.  The law recognizes no distinction among types of parties.  All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of these written jury instructions to take with you.  If you desire during your deliberations to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you.  Once you retire, you should select your Foreperson and conduct your deliberations.  If you

---

[65]  *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-1528-JRG (E.D. Tex.)

recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your verdict, your Foreperson is to fill in on the verdict form with your unanimous answers to those questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to your memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.  By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to.  You should understand the practice in this Court is that, after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case -- and I can tell you they would be interested to hear from you -- it's up to you to initiate a conversation with them.  They are not permitted to initiate a conversation with

you.   Again, whether you discuss your jury service after the receipt of the verdict and you're discharged as jurors is your decision and your decision alone.

I will now hand the verdict form and copies of these instructions to the Court Security Officer to deliver to the jury room.

[JURY INSTRUCTIONS AND SPECIAL VERDICT FORM HANDED OUT]

Ladies and Gentlemen, you may now retire to the jury room to deliberate. We await your verdict.